GIBSON *v.* WILSON, and *vice versa* (two cases).

1. The plaintiff in fi. fa. filed an equitable amendment in aid of his levy, to which a claim had been interposed, alleging, among other things, that claimant held the legal title to the land levied on merely to secure certain sums of money advanced by him to the defendant in fi. fa. to pay off certain incumbrances on the land, for which advances the claimant

was to be repaid out of the rents, issues, and profits of the land; and seeking to have an accounting between the claimant and the defendant, in order to ascertain whether or not said advances have been fully repaid. One of the prayers of the amendment was, that, if the claimant had any valid claim on the lands levied upon, for advances, "the amount thereof be fixed and made a first charge upon the proceeds of the sale." *Held*, that, in order to obtain the relief here prayed for, the defendant in fi. fa. was an essential party, and inasmuch as said defendant was not made a party, no such accounting between her and the claimant could be had.

2. The plaintiff being entitled to other equitable relief under his petition as it stood, the question as to whether the defendant in fi. fa. was a necessary party in order to entitle the plaintiff to an accounting, as stated in the first headnote, was not adjudicated by the court in overruling a general motion to dismiss the entire equitable petition.

3. The verdict rendered by the jury was the only one that could have been reached under the evidence, and the judgment of the court below refusing a new trial will not be disturbed.

Argued June 4, 1907.—Decided February 28, 1908.

Claim. Before Judge Hammond. Columbia superior court. September 29, 1906.

Two executions, one in favor of J. W. Gibson, and the other in favor of Rozier Gibson by his next friend, were levied upon a tract of land containing three hundred acres, more or less, as the property of Mrs. L. W. Gibson, defendant in fi. fa. J. E. Wilson interposed a claim to the levy of each fi. fa. The two claim cases, involving the same issues, were tried together, a verdict being rendered in each case for the claimant. Both cases are before this court for review; but as a decision in one case will necessarily control the other, they will be treated together here. The facts disclosed by the record were as follows: In 1882 S. A. Gibson, the father of the plaintiffs, borrowed $800 from the New England Mortgage Security Co., and secured the same by a deed to the lands levied on by the plaintiffs. During the same year S. A. Gibson died, and the equity of redemption in said lands was set apart as a year's support for his widow, Mrs. L. W. Gibson, and her minor children, Rozier, Maude, Carl, and J. W. Gibson. In 1889 the children conveyed to their mother their interest in the land so set apart, and she gave her notes for $400 each to J. W. Gibson and Rozier Gibson respectively, as payment for their interests in said land. Shortly after this, Mrs. Gibson, in order to pay off the loan to the New England Mortgage Security Co., bor-

rowed $1,290 from the Equitable Mortgage Co., and from the pro-
ceeds of this loan she paid off the New England Mortgage Security
Co., and received from it a deed of reconveyance. She then exe-
cuted a deed 'to said lands to the Equitable Mortgage Co., to se-
cure said loan, and took from the latter company a bond for titles.
In 1894 Mrs. Gibson entered into an agreement with her son-in-
law, Wilson, the claimant in this case, to convey to him 105 acres
of said land, provided he would advance $750 to be applied to the
indebtedness of the Equitable Mortgage Co., said indebtedness
amounting to $1,392.40. In pursuance of this agreement Wilson
paid to the Equitable Mortgage Co. $102.40, and received from
Mrs. Gibson a bond for titles, containing the agreement above re-
ferred to, and conditioned to make him an absolute deed to the
105 acres of land upon his paying the additional sum of $647.60
to the Equitable Mortgage Co. It was understood at the time that
Rozier Gibson was to pay off the balance of the loan, so as to free
the land from the incumbrance of the Equitable Mortgage Co.;
but before making any payment on said loan, Rozier Gibson was
sent to the insane asylum. In 1896 Mrs. Gibson, being unable to
pay the balance due to the Mortgage Co., executed to Wilson a
warranty deed to the entire three-hundred-acre tract of land, nam-
ing $1,290 as the consideration. Wilson went into possession of
the three hundred acres, and began making payments on the bal-
ance of the debt due the Mortgage Co. Mrs. Gibson continued to
reside in the house located on the 105-acre tract until 1902, when
she voluntarily left the place, and has never returned. Sometimes
she gave rent notes to Wilson for a portion of the land, but the
record does not disclose whether she ever paid these notes. In
1897, Wilson being unable to meet the payment to the Equitable
Mortgage Co., and desiring an extension of the time, the following
transactions were made: the Equitable Mortgage Co. conveyed its
interest in the land to the Equitable Securities Co., Wilson recon-
veyed his interest to Mrs. Gibson, and she, in consideration of the
cancellation of her notes, surrendered her equity of redemption in
the land to the Equitable Securities Co. At the same time, in the
year 1897, the Equitable Securities Co. executed to Wilson a bond
for titles to the land, and Wilson gave to the Securities Co. three
purchase-money notes amounting to $1,154.94. In 1899, Wilson
having paid said notes, the Equitable Securities Co. executed to

him a warranty deed to the land. In 1903 J. W. Gibson, and Rozier Gibson by next friend, brought suit against Mrs. Gibson on the two notes given by her to them in 1889; judgment was rendered against her; and in 1904 the executions were levied upon the three hundred acres of land, to which levies Wilson interposed his claims. The plaintiff in fi. fa. in each case filed an equitable amendment in aid of his levy, and alleged, in substance, that the land levied upon has been, at all times since the creation of the debt to the Mortgage Co., worth $2,500 or $3,000; that when Mrs. Gibson executed the deed to Wilson in 1896, and when she executed the deed to the Equitable Securities Co. in 1897, she was insol-vent or rendered so by making said deeds, and the deeds were without consideration and void, and a benefit was reserved to Mrs. Gibson; that the only consideration of the deed to Wilson in 1896 was an agreement that he should hold the title to the land until he had paid off the incumbrance out of the rents and profits, and then he was to reconvey the land to Mrs. Gibson; that Wilson paid nothing but the $1,290 due on the loan, and he has received $450 per annum in rents from the place since January, 1896, from which he had paid off the incumbrance out of the rents and profits, and in 1902 Mrs. Gibson tendered him any balance that might be due him, which he refused; that Wilson held the title to the land in trust for Mrs. Gibson, and, having been repaid the sums which he advanced, he no longer has any interest in the land; that Wilson obtained the deeds to the land by representing to Mrs. Gibson that when he had paid off the incumbrance out of the rents and profits he would reconvey the land to her, and his conduct in claiming the lands absolutely is a gross fraud upon Mrs. Gibson and an abuse of her confidence in him; and that Wilson has actually paid less than half the value of the land. Paragraph fourteen of the amendment is in the following language: "If any of said sum [advanced by Wilson to pay the loan] is still unpaid and due said Wilson, the plaintiff stands ready to repay the same, that said land may be sold under the prayers hereof under said fi. fa." The prayer of the petition is, "That said land be found sub-ject," &c., and, "if said Wilson has any valid claim thereon for advances, that the amount thereof be fixed and made a first charge upon the proceeds of the sale." To this equitable amendment the claimant demurred generally. The court overruled the demurrer,

and the claimant excepted pendente lite. The claimant also filed an answer, denying every material allegation in said amendment. Upon the trial the jury returned a verdict in each case in favor of the claimant. The plaintiffs in fi. fa. moved for a new trial upon numerous grounds. The court overruled the motions, and the plaintiffs excepted. The claimant brings his cross-bill and assigns error upon his pendente lite exceptions.

*P. B. Johnson* and *Samuel H. Sibley,* for plaintiffs.

*Lamar & Callaway,* contra.

BECK, J. (After stating the facts.)

1. The motion for a new trial contains various assignments of error upon the charge of the court; but it is unnecessary to take up these assignments of error, inasmuch as the verdict rendered in the case was the only one which could have been reached under the evidence. If Mrs. Gibson had been made a party to the suit, issues would have been made for decision by the jury as to whether or not, upon an accounting between her and the claimant, the debt which she contended the deeds had been made to secure had been paid off, and she, therefore, entitled to a reconveyance of the premises in dispute. But inasmuch as she had not been made a party, no such accounting could have been entered upon, nor would the jury have been authorized to return a verdict, based upon such an accounting, finding that she was vested with a perfect equity or was entitled to a reconveyance. *Grace* v. *Means,* 129 *Ga.* 638 (59 S. E. 811). Her right to a reconveyance, even in case the rents, issues, and profits had been sufficient to pay off the entire debt, would have been dependent upon the existence of a valid contract for reconveyance between her and Wilson. It can hardly be insisted, however, that there is any evidence to show that any such agreement had been entered into by Wilson as to the entire ·tract of land levied on.

Counsel for the plaintiff in error takes the position "that the court had adjudged, in the face of the demurrer raising the question in this very case, that the pleadings were sufficient to entitle plaintiff to the accounting and special decree he asks." We do not think so. The only demurrer filed was a general demurrer aimed at the equitable petition as a whole, the claimant moving "to dismiss" the entire petition. The overruling of the demurrer was not an adjudication that the plaintiff was entitled to every

form of relief that was prayed. It was merely an adjudication that the petition, if true, was not without equity, and showed such an interest in Mrs. Gibson as might be levied upon by the plaintiff under his fi. fa. In said petition it was alleged: "The only consideration of said deed of March 7, 1896, was an agreement that said Wilson, who was the son-in-law of Mrs. Gibson, should take the title to said land in himself, representing that it was necessary in order for him properly to deal with the loan thereon and safely to advance the tenants thereof as landlord, he being a merchant, and from the rents and profits thereof pay off said incumbrance, and then said land should be returned to said Mrs. Gibson. . . On the 15th day of November, 1902, she offered to come to a settlement with said Wilson in reference to said rents, and tendered to him any balance that might be due said Wilson in respect of said land and the incumbrance thereon; but said Wilson refused to come to any settlement or to receive any money, but claimed to have become the absolute owner of said land. Under the terms of said agreement, said Wilson had at no time any title to said land, except to secure such sums, if any, as he had advanced to pay said incumbrance, but held the title in trust for said Mrs. Gibson. Having been fully repaid, and by reason of the tender of said Mrs. Gibson aforesaid, he has no longer any right whatever to retain said title. . . Said Wilson, furthermore, represented to said Mrs. Gibson that the necessity and purpose of said conveyances signed by her, as alleged, were as set out in paragraph 7 [quoted above], and induced her to sign the same on the understanding that said land, when worked out of debt, should revert to her." Here we have the distinct allegation that Wilson had at no time any title to said land, except to secure such sums as he had advanced to pay incumbrances thereon, and the allegation that Mrs. Gibson had tendered to Wilson "any balance that might be due said Wilson in respect of said land and the incumbrance thereon; but said Wilson refused to come to any settlement or to receive any money." Clearly, if these allegations were true, the plaintiff would have been entitled to some form of equitable relief, and, the court should not upon motion have dismissed the entire petition merely because under it the plaintiff could not have other equitable remedies that he might have had or been entitled to, had other parties been joined in the action. The plain-

tiff being entitled to some equitable relief under his petition as it stood, the question as to whether another was a necessary party, in order to entitle the plaintiff to the application of other and broader equitable remedies, was not raised by the motion to dismiss the petition.

If an issue like that which we have suggested above had been made, and if the evidence touching that issue had been sufficient to authorize a finding for or against Mrs. Gibson upon that question, and the jury had rendered a verdict against her, then material errors in the charge hurtful to her and the plaintiff would have required the granting of a new trial. But, because of the nonjoinder of Mrs. Gibson as a party, that issue was not properly in the case.

The equitable petition of the plaintiff, however, contained an allegation which, if sustained by the evidence, would have required a finding in favor of the plaintiff, and that was an allegation of a tender by Mrs. Gibson; because, if such a tender had been made by her, she would have been vested with a perfect equity in the land, and this would have been a leviable interest. While the allegation of tender, had it been attacked by a special demurrer, might have required amendment, it was sufficient to withstand a general demurrer, it being alleged, that, "On the 15th day of November, 1902, she [Mrs. Gibson] offered to come to a settlement with said Wilson in reference to said rents, and tendered to him any balance that might be due said Wilson in respect of said land and the incumbrance thereon; but said Wilson refused to come to any settlement or to receive any money, but claimed to have become the absolute owner of said land." But the contention of the plaintiff in his pleadings, upon the question of tender, can not avail him in the motion for a new trial, for the simple reason that there was no evidence whatever to sustain him in it.

Eliminating the contentions of the plaintiff, that upon an accounting it would appear that Mrs. Gibson had a leviable interest in the land, and that because of a tender she was revested with an interest that was subject to the plaintiff's execution, there remains in the case only one theory of the plaintiff upon which he would have been entitled to a verdict finding the property subject, and that is that the conveyance by Mrs. Gibson to the Equitable Securities Co., and by the latter to the claimant, was but a scheme

by means of which a conveyance was made from Mrs. Gibson to the claimant, and that a benefit was reserved to her; and that such a transaction was void as against creditors, under the provisions of the Civil Code, §2695, par. 1. Of course, if the series of conveyances which terminated in the deed from the Equitable Securities Co. to the claimant was merely to effectuate the purpose to transfer property from the first grantor to the last taker, and it was understood that an interest in the property was intended to be reserved or be secured to the first grantor, such an effort or attempt would have been nugatory as against creditors of the grantor, it appearing that the grantor at the time of making the conveyance was insolvent or became insolvent upon the execution of the conveyance, and the property thus sought to be conveyed out of the grantor might be levied upon by the creditors whose claims had been reduced to judgment. Whatever questions, however, might appear upon the face of this record as to the plaintiff's rights under the theory last stated are eliminated from the case, as it comes to us for decision, by the plaintiff himself. In his brief, counsel for the plaintiff says: "It is said that a superior title was undoubtedly outstanding in the Equitable Securities Co. to secure the $1,290 debt, and that this title at least is valid in Wilson, and the land can not be subjected without redemption. This proposition we have never denied. It is only the conveyance of the equity of redemption that we attack. Our whole case is that the $1,290 debt has been paid; that $649 of it was paid, relatively to Wilson, by his assumption of it for 105 acres of the land; that the remainder has been paid either by the 150-acre tract, or else by the rents and profits received; and if there is anything left unpaid, that the decree shall be molded so as to pay it. We do not object to Wilson having the 105 acres which he bought, nor do we object to his having reimbursement for any part of the debt he has paid, but don't think it right that he shall have the plantation for his services in relieving it from the remaining debt of about $640."

Counsel for plaintiff in error finally insist that there was "a right in Mrs. Gibson to take at least 100 acres of land and probably 250, if not complete, at least to be completed on the payment of some small amount, which her creditors may subject." We do not think that this contention has strength or merit. Under no

view of the evidence in the case would the jury have been author-
ized to segregate a particular tract or lot of land carved out from
the body of land levied upon, and to say that this tract is subject
but that the remainder is not. Moreover, it appears that this con-
tention was based upon the theory that the plaintiff in fi. fa. was
entitled to have an accounting between Mrs. Gibson and Wilson;
and, as we have pointed out above, this could not be done without
making Mrs. Gibson a party to the case.

The plaintiff had levied upon the land described in the levy in
its entirety, and the question for the jury to decide was whether
the defendant in fi. fa. had a leviable interest in that land. Fail-
ing to adduce evidence authorizing a finding that she had, he failed
to make out a case; and the verdict adverse to him was one brought
about, not by errors of the court's charge, but by the irresistible
force of the evidence upon the controlling issues in the case.

*Judgment affirmed on main bill of exceptions. Cross-bill of ex-
ceptions dismissed. All the Justices concur, except Holden. J.,
who did not preside.*